# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. CR-24-146-R |
| v. ) | |
| MATTHEW ALAN STACY, ) | |
| Defendant ) | |

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE
## TO PLEAD NECESSARY *MENS REA* ELEMENT

### WITH INCORPORATED BRIEF IN SUPPORT

Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 742-9015
Email: rmg@goldstein-lawfirm.com

*Admitted pro hac vice*

Josh Welch, OBA #17214
Joey Degiusti, OBA #33734
DEGIUSTI & WELCH PLLC
3721 N. Classen Blvd
Oklahoma City, OK 73118
Telephone: 405.778.3098
Email: josh@dwlegal.law
Email:  joey@dwlegal.law

***Attorneys for Defendant***

## TABLE OF CONTENTS

Page

REQUEST FOR HEARING ........................................................................................... 1

BRIEF IN SUPPORT ..................................................................................................... 2

I.     Introduction ............................................................................................... 2

II.    Supreme Court Precedent Mandates Proof Of Mr. Stacy's Subjective Knowledge And Intentionality Of State Law Violation .......................... 4

III.   The Analogous Precedent Relied Upon By Ruan Court Likewise Supports Dismissal Here .......................................................................... 9

IV.   The Indictment Omits The Essential Mens Rea Element ...................... 13

V.    Conclusion ............................................................................................... 14

## TABLE OF AUTHORITIES

Page

**Cases**

*Carter v. United States*, 530 U.S. 255 (2000) ................................................................. 5

*Elonis v. United States*, 575 U.S. 723 (2015) ............................................................... 3, 5

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ........................................................................ 7

*Liparota v. United States*, 471 U.S. 419 (1985) ...................................................... 1, 3, 9, 10

*Morissette v. United States*, 342 U.S. 246 (1952) ...................................................... 1, 3, 5

*Nelson v. United States*, 406 F.2d 1136 (10th Cir. 1969) ............................................... 13

*Rehaif v. United States*, 588 U.S. 225 (2019) ........................................................... passim

*Robinson v. United States*, 263 F.2d 911 (10th Cir. 1959) ............................................. 13

*Ruan v. United States*, 597 U.S. 450 (2022) .............................................................. passim

*Russell v. United States*, 369 U.S. 749 (1962) ................................................................ 13

*Staples v. United States*, 511 U.S. 600 (1994) ........................................................... passim

*United States v. Kahn*, 58 F.4th 1308 (10th Cir. 2023) .................................................... 12

*United States v. Nguyen*, Western District of Oklahoma, Case No. Cr-23-258-SLP ......... 8

*United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) ............................................... 13

*United States v. Smithers*, 92 F.4th 237 (4th Cir. 2024) .................................................. 9

*United States v. Stevens*, 612 F.2d 1226 (10th Cir. 1979) .............................................. 13

*United States v. United States Gypsum Co.*, 438 U.S. 422 (1978) ............................... 7, 8

## TABLE OF AUTHORITIES

**Page**

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) ................................*passim*

**Statutes**

21 U.S.C. §841 ................................................................................................*passim*

Consolidated Appropriations Act, Pub. L. No. 118-42, § 531, 138 Stat. 25, 174 (2024)................................................................................................................... 9

**Other Authorities**

O. Holmes, *The Common Law 3* (1881)........................................................... 12

## MOTION TO DISMISS FOR FAILURE
## TO PLEAD NECESSARY *MENS REA* ELEMENT

Now comes the Defendant, Matthew A. Stacy, by and through undersigned counsel, pursuant to the Fifth and Sixth Amendments of the United States Constitution and Fed.R.Crim.P. 12(b)(1) and (3), and hereby moves the Court for an order dismissing the indictment returned in this matter as to Mr. Stacy.

As grounds and reasons therefore, a federal prosecution of a Cannabis-State resident for marijuana related-offenses under the Controlled Substances Act requires proof that the individual knowingly and intentionally violated his state's laws governing medical marijuana. *See, e.g., Ruan v. United States*, 597 U.S. 450 (2022); *Rehaif v. United States*, 588 U.S. 225 (2019); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Staples v. United States*, 511 U.S. 600 (1994); *Liparota v. United States*, 471 U.S. 419 (1985); *Morissette v. United States*, 342 U.S. 246 (1952). Where a statute criminalizes conduct that is otherwise authorized, the government must allege and prove the charged individual knew he was acting in a manner "not authorized." Here, the indictment does not charge, and the grand jury did not find, this essential subjective *mens rea* element, as to both counts. As such, the indictment must be dismissed.

The Defendant further relies upon the brief in support incorporated below.

## REQUEST FOR HEARING

The Defendant respectfully requests a hearing in this matter.

1

## **BRIEF IN SUPPORT**

**I.      *Introduction.***

Mr. Stacy, a duly licensed and practicing attorney in Oklahoma since 2014, provided legal services and advice to individuals seeking to cultivate marijuana within Oklahoma, wherein it is lawful to do so.  Mr. Stacy did not invest in any marijuana grow operations, he did not take ownership in any marijuana grow operations, he did not have any interest in any profits of any grow operation, he did not have any control over any marijuana grow operation, he did not operate any grow operations, he did not possess any marijuana, he did not distribute any marijuana, and he did not manufacture any marijuana.  All he did was his level best to interpret and apply the immature and byzantine state statutes governing medical marijuana in Oklahoma.  Nonetheless, the government has charged Mr. Stacy as if he were a prolific drug dealer, and seeks to imprison him for a minimum of 10 years and up to a lifetime.

In a companion pleading filed today, *see* Dkt. Entry 82, Mr. Stacy outlines why the government's proposed application of the Controlled Substances Act to the facts and circumstances of this case violates the void-for-vagueness doctrine of the Due Process Clause.  But, the government's proposed application of the Controlled Substances Act not only offends the Due Process Clause, it contravenes a string of Supreme Court cases spanning approximately 40 years: where a statute criminalizes conduct that is otherwise authorized, the government must prove the charged individual knew he was acting in a manner "not authorized."  *See, e.g.*, *Ruan v. United States*, 597 U.S. 450 (2022); *Rehaif v. United States*, 588 U.S. 225 (2019); *United States v. X-Citement Video, Inc.*, 513 U.S. 64

(1994); *Staples v. United States*, 511 U.S. 600 (1994); *Liparota v. United States*, 471 U.S. 419 (1985). That is because the criminal law seeks to punish the "vicious will,'" and, "[w]ith few exceptions, wrongdoing must be conscious to be criminal." *Ruan*, 597 U.S. at 457 (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952) and *Elonis v. United States*, 575 U.S. 723, 734 (2015)). "Scienter requirements advance this basic principle of criminal law by helping to 'separate those who understand the wrongful nature of their act from those who do not.'" *Rehaif*, 588 U.S. at 231 (quoting *X-Citement Video*, 513 U.S. at 72-73, n.3).

Through its repeated passage of the Rohrabacher-Farr Amendment to the Consolidated and Further Continuing Appropriations Act, Congress has expressed its clear intent: a citizen acting in compliance with state medical marijuana law is otherwise authorized to engage in conduct that facially violates the Controlled Substances Act. Mr. Stacy's compliance *vel non* with Oklahoma's medical marijuana laws therefore becomes ***the*** crucial fact separating innocent behavior from wrongful conduct. As such, just as the Supreme Court applied the "knowingly or intentionally" *mens rea* element of 21 U.S.C. §841 to the "[e]xcept as authorized" language of §841, *Ruan v. United States*, 597 U.S. 450 (2022), here the government must allege and prove that Mr. Stacy "knowingly or intentionally" engaged in conduct not authorized by controlling state law.

As such, because the government has failed to allege this essential *mens rea* element, the indictment must be dismissed as to Mr. Stacy.

## II.   *Supreme Court Precedent Mandates Proof Of Mr. Stacy's Subjective Knowledge And Intentionality Of State Law Violation.*

The Supreme Court consistently has mandated proof of scienter when a statute criminalizes conduct that is otherwise authorized, and has even done so when a statute is silent as to *mens rea*:

> *The cases in which we have emphasized scienter's importance in separating wrongful from innocent acts are legion*. We have interpreted statutes to include a scienter requirement even where the statutory text is silent on the question. And we have interpreted statutes to include a scienter requirement even where "the most grammatical reading of the statute" does not support one.

*Rehaif*, 588 U.S. at 231 (internal citations omitted) (emphasis added).  Here, where a violation of state medical marijuana laws "plays a 'crucial' role in separating innocent conduct . . . from wrongful conduct," *Ruan*, 597 U.S. 459 (quoting *X-Citement Video*, 513 U.S. at 73), binding Supreme Court precedent demands proof that Mr. Stacy knowingly and intentionally violated the Oklahoma medical marijuana statutes.

In *Ruan v. United States*, the Supreme Court addressed the *mens rea* requirement of 21 U.S.C. §841 in the context of a prosecution of doctors under the Controlled Substances Act.  As the Court noted, §841 "makes it a federal crime, "*[e]xcept as authorized*[,] ... for any person knowingly or intentionally ... to manufacture, distribute, or dispense ... a controlled substance …."  *Ruan*, 597 U.S. 454.  In each of the two consolidated cases before the Court, a doctor was convicted under §841 for dispensing controlled substances not "as authorized."  *Id.*  Reversing convictions affirmed by the Tenth and Eleventh Circuits, the Ruan Court held that the "knowingly or intentionally" scienter requirement of §841 applied to the "except as authorized" phrase within §841,

4

notwithstanding it sequentially appeared after the "[e]xcept as authorized" phraseology. Each of the reasons articulated by the Ruan Court mandate the same result here.

First, the Court noted that, "as a general matter, our criminal law seeks to punish the 'vicious will,'" and that, "[w]ith few exceptions, 'wrongdoing must be conscious to be criminal.'" *Ruan*, 597 U.S. at 457 (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952) and *Elonis v. United States*, 575 U.S. 723, 734 (2015)). "[C]onsciousness of wrongdoing is a principle," the Court noted, "'as universal and persistent in mature systems of [criminal] law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.'" *Id.* (quoting *Morissette*, 342 U.S. at 250). As such, when the Court "interpret[s] criminal statutes, [it] normally 'start[s] from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state.'" *Id.* at 457-58 (quoting *Rehaif*, 588 U.S. at 228-29).

For this reason, *even when a statute is silent* "on the required mental state," the Court will "read into" the statute "that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* at 458 (quoting *Elonis*, 575 U.S. at 736 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000))). When a statute "is not silent as to *mens rea* but instead '*includes* a general scienter provision,' 'the presumption applies with equal or greater force' to the scope of that provision." *Id.* (quoting *Rehaif,* 588 U.S. at 229). The Court has "accordingly held that a word such as 'knowingly' modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'" *Id.* (quoting *Rehaif,* 588 U.S. at 232).

5

Turning to the issue at hand, after noting that §841 contains "a general scienter provision" of "knowingly or intentionally," the Court observed that in §841 prosecutions "a lack of authorization is often what separates wrongfulness from innocence." *Id*. Noting there is nothing "inherently illegitimate" about a doctor dispensing drugs via prescription, and that we "usually want" doctors to prescribe needed medications, the Court observed that in §841 prosecutions "it is the fact that the doctor issued an *unauthorized* prescription that renders his or her conduct wrongful, not the fact of the dispensation itself." *Id*. at 459 (emphasis in original). "In other words, authorization plays a 'crucial' role in separating innocent conduct—and, in the case of doctors, socially beneficial conduct—from wrongful conduct." *Id*. at 459 (quoting *X-Citement Video*, 513 U.S. at 73).

The exact analysis applies with equal force to an attorney, practicing in a state that has authorized medical marijuana, charged with violating §841 because of his dispensation of legal services and advice. Whether or not Mr. Stacy acted in compliance with Oklahoma's state laws is the "crucial" fact that separates wrongful conduct from innocent behavior. There is nothing "inherently illegitimate" in Mr. Stacy's work as a lawyer to help clients obtain state licenses and registrations to cultivate medical marijuana, given that cultivation of medical marijuana is lawful in Oklahoma. And, we "usually want" lawyers to help individuals who strive to comply with a dense, complicated and ever-changing statutory scheme. Thus, here, it can only be the (unalleged) possibility that Mr. Stacy knowingly and intentionally operated outside of the state statutory scheme that would render his conduct wrongful, not the fact he was

6

assisting individuals in their attempt to obtain licenses to cultivate (or leasing his building to others). "In other words, authorization plays a 'crucial' role in separating innocent conduct—and, in the case of [lawyers,], socially beneficial conduct—from wrongful conduct." *Ruan*, 597 U.S. at 459 (quoting *X-Citement Video*, 513 U.S. at 73).

In *Ruan*, the Court buttressed its conclusion by looking at the "ambiguous" regulatory language defining an authorized prescription, noting it is "written in 'generalit[ies], susceptible to more precise definition and open to varying constructions.'" *Ruan*, 597 U.S. at 459 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006)); *Id.* (citing *Gonzales*, 546 U.S. at 257 (regulation "gives little or no instruction on" major questions)). Noting the "conduct prohibited by such language (issuing invalid prescriptions) is thus 'often difficult to distinguish from the gray zone of socially acceptable ... conduct' (issuing valid prescriptions)," the Court opined that a "strong scienter requirement helps to diminish the risk of 'overdeterrence,' *i.e.*, punishing acceptable and beneficial conduct that lies close to, but on the permissible side of, the criminal line," *Id*. (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 441 (1978)).

The same is true here. At minimum, the Oklahoma state statutory scheme was "ambiguous," if not inscrutable. As detailed in Mr. Stacy's Motion To Enjoin, Dkt. Entry 67, there was significant doubt as to the meaning, intent and scope of the state statutory scheme, it was subject to constant changes and amendments, and Mr. Stacy undertook extensive efforts to discern the state agencies' interpretation of the statutory sections at issue, including at least three different in-person meetings. As such, for the very same

reasons identified by the Ruan Court, a "strong scienter requirement helps to diminish the risk of 'overdeterrence,' *i.e.*, punishing acceptable and beneficial conduct that lies close to, but on the permissible side of, the criminal line." *Id*. (quoting *United States Gypsum*, 438 U.S. at 441).

Indeed, without the protection of a meaningful *mens rea* requirement here, the government believes it is free to charge any person cultivating marijuana in Oklahoma, for any reason it chooses, whether or not that person acted in accordance with state laws, and whether or not that person actually believed they were acting in accordance with state laws. *See, e.g., United States v. Nguyen*, Western District of Oklahoma, Case No. Cr-23-258-SLP, Dkt. Entry 61 (government moving to bar any evidence of compliance with state law, asserting, *inter alia*, "[s]tate law is not a defense to a federal crime, and under the Federal Rules of Evidence, whether Mr. Nguyen's conduct complied with state law does not have any tendency to make it more or less probable that he violated federal law"). That cannot be the law. "It is unthinkable . . . that Congress intended to subject such law-abiding, well-intentioned citizens to a possible . . . term of ***[life] imprisonment*** if . . . what they genuinely and reasonably believed" was lawful "turns out to have" violated state law. *Staples*, 511 U.S. at 615 (citation omitted) (emphasis added).

Next, the Ruan Court stressed the "severe penalties" inflicted upon persons who violate §841, including "life imprisonment and fines up to $1 million." *Ruan*, 597 U.S at 460. "Such severe penalties counsel in favor of a strong scienter requirement." *Id*. (citing *Staples*, 511 U.S. at 618-19 (noting that "a severe penalty is a further factor tending to suggest that ... the usual presumption that a defendant must know the facts that

8

make his conduct illegal should apply")).  Clearly, this analysis applies to the facts of this case, with the added potential punishment of a mandatory minimum of 10 years imprisonment for Mr. Stacy (as to Count 1).

Finally, Congress has clearly expressed its intent through its successive enactment of the Rohrabacher-Farr Amendment to the Consolidated and Further Continuing Appropriations Act: a citizen acting in compliance with state medical marijuana law is authorized to engage in conduct that facially violates the Controlled Substances Act.  *See* Consolidated Appropriations Act, Pub. L. No. 118-42, § 531, 138 Stat. 25, 174 (2024). The Rohrabacher-Farr Amendment serves as the functional analogue to the "except as authorized" language at issue in *Ruan*.  In other words, no matter the source of the claimed authorization—whether it be the textual language of §841 or Congress's successive enactment of the Rohrabacher-Farr Amendment, the result must be the same: "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."  *Ruan*, 597 U.S at 468; *see also United States v. Smithers*, 92 F.4th 237, 251 (4th Cir. 2024) (vacating convictions where jury instructions failed to "requir[e] a subjective *mens rea*," necessary under *Ruan*).

**III.     *The Analogous Precedent Relied Upon By Ruan Court Likewise Supports Dismissal Here*.**

To support its conclusion in *Ruan*, the Court looked to "[a]nalogous precedent," in particular *Liparota, X-Citement Video*, and *Rehaif*.  In *Liparota*, interpreting a statute penalizing anyone who "knowingly uses [food stamps] in any manner not authorized by" statute, the Court held that "knowingly" modified "both the 'use' of food stamps element

9

and the element that the use be 'not authorized.'" *Ruan*, 597 U.S. at 460 (quoting *Liparota*, 471 U.S. at 423). The Court "applied 'knowingly' to the authorization language even though Congress had not 'explicitly and unambiguously' indicated that it should so apply." *Id.* (quoting *Liparota*, 471 U.S. at 426). The Court reasoned that "if knowingly did not modify the fact of nonauthorization . . . the statute 'would ... criminalize a broad range of apparently innocent conduct.'" *Id.* (quoting *Liparota*, 471 U.S. at 423).

In *X-Citement Video*, the Court interpreted "a statute penalizing anyone who 'knowingly transports' or 'knowingly receives' videos 'involv[ing] the use of a minor engaging in sexually explicit conduct.'" *Id.* (quoting *X-Citement Video*, 513 U.S. at 68). Once again, the Court held that "'knowingly' applied not only to the element of transporting or receiving videos, but also to the elemental fact that the videos involve 'the use of a minor.'" *Id.* at 460-61 (quoting *X-Citement Video*, 513 U.S. at 66). It so held despite "recogniz[ing] that this was not 'the most grammatical reading of the statute.'" *Id.* at 461 (quoting *X-Citement Video*, 513 U.S. at 70). But, the Court "explained, 'the age of the performers is the crucial element separating legal innocence from wrongful conduct,' for possessing sexually explicit videos involving *nonminors* is protected First Amendment activity." *Id.* (emphasis in original) (quoting *X-Citement Video*, 513 U.S. at 72-73).

Finally, the Court looked to *Rehaif*, where it "interpreted a statutory scheme in which one statutory subsection provided penalties for anyone who 'knowingly violates' a separate subsection." *Id.* The "latter subsection made it 'unlawful' for people with

10

certain statuses (*i.e.*, being a felon or being in the country unlawfully) to possess a gun." *Id.* The Court once again held that "the first subsection's 'knowingly' language applied to the status element in the second subsection," and that the government therefore "had to prove that a defendant knew he had one of the listed statuses." *Id.* "Without knowledge of that status," the Court "reasoned, 'the defendant may well lack the intent needed to make his behavior wrongful,' because '[a]ssuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent.'" *Id.* (quoting *Rehaif*, 588 U.S. at 232).

The common thread running through these cases, and solidified by the Court in *Ruan*, is that where a predicate statutory violation or status serves as "the crucial element separating legal innocence from wrongful conduct," *X-Citement Video*, 513 U.S. at 73, a statute's *mens rea* elements must apply to that predicate violation or status. In all three of these analogous cases, and in *Ruan*, the statutes at issue "contain[] a scienter provision," and "the statutory clause in question plays a critical role in separating a defendant's wrongful from innocent conduct." *Ruan*, 597 U.S. at 461. Here, because Congress has repeatedly enacted the Rohrabacher-Farr Amendment, Mr. Stacy's compliance *vel non* with Oklahoma's state statutes is ***the*** critical fact that separates wrongful from innocent conduct. And, for all of reasons underlying the Court's decisions in *Ruan* and the analogous cases, the same scienter requirement is mandated here.

Another Supreme Court decision of note is *Staples v. United States*, 511 U.S. 600, 619 (1994), wherein the Court held the government "should have been required to prove that petitioner knew of the features of his AR-15 that brought it within the scope of the

11

Act" requiring registration. While the statute at issue contained <u>no</u> *mens rea* requirement, the Staples Court observed that "silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, *which would require that the defendant know the facts that make his conduct illegal*." *Id.* at 605 (emphasis added). Here, Congress has expressed its intent, through successive enactments of the appropriations act rider, that violation of state medical marijuana laws is a predicate fact that makes Mr. Stacy's conduct illegal under the Controlled Substances Act. As such, just as in *Staples*, the government must prove Mr. Stacy knew and intended that predicate fact.[1]

In *Rehaif*, the Court explained:

> It is therefore the defendant's *status*, and not his conduct alone, that makes the difference. *Without knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful. His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach. Cf.* O. Holmes, The Common Law 3 (1881) ("even a dog distinguishes between being stumbled over and being kicked").

*Rehaif*, 588 U.S. at 232 (emphasis added). Here, given Congress's enactment of the Rohrabacher-Farr Amendment, it is Mr. Stacy's *status* of being outside the protections of Oklahoma state law, not his conduct alone, that constitutes the crucial differentiator. "Without knowledge of that status, [Mr. Stacy] may well lack the intent needed to make his behavior wrongful." *Id*.

---

[1] *See also United States v. Kahn*, 58 F.4th 1308, 1315 n.3 (10th Cir. 2023) ("knowingly engaging in conduct that is, in fact, unauthorized is not sufficient, even if one is aware of all the factors that render it unauthorized. Instead, the government [i]s required to prove that the defendant actually knew that his conduct was unauthorized under the law").

12

### IV. *The Indictment Omits The Essential Mens Rea Element.*

The Fifth Amendment to the United States Constitution guarantees, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." The Sixth Amendment independently requires that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." In addition to protecting these fundamental rights of defendants, criminal indictments also serve "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *Russell v. United States*, 369 U.S. 749, 768 (1962) (citation omitted).

In order to ensure compliance with these principles, an indictment is required to "allege each essential element of the crime charged." *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001). "The failure to properly allege the requisite intent" necessary to support conviction is, for example, grounds for dismissal. *Nelson v. United States*, 406 F.2d 1136, 1137 (10th Cir. 1969); *see also Robinson v. United States*, 263 F.2d 911, 912 (10th Cir. 1959) (holding that indictment must be dismissed for failing to "allege that the accused knew that the contraband was imported or brought into the United States contrary to law"); *United States v. Stevens*, 612 F.2d 1226, 1230 (10th Cir. 1979) ("Generally, every required mental element must be alleged.").

Here, the indictment's charging paragraphs fail to allege that Mr. Stacy knowingly and intentionally violated Oklahoma's medical marijuana laws, and there are no such

facts alleged anywhere in the indictment. The failure to plead this essential *mens rea* element requires dismissal of both counts.

**V.      *Conclusion.***

For all of the foregoing reasons, and those to be advanced to the Court at a hearing in this matter, the defense respectfully requests an order dismissing all charges against Mr. Stacy.

                Respectfully Submitted,

**/s/ Robert M. Goldstein**
Robert M. Goldstein
*Admitted pro hac vice*
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 742-9015
Email: rmg@goldstein-lawfirm.com

Josh Welch, OBA #17214
Joey Degiusti, OBA #33734
DEGIUSTI & WELCH PLLC
3721 N. Classen Blvd
Oklahoma City, OK 73118
Telephone: 405.778.3098
Email: josh@dwlegal.law
Email:  joey@dwlegal.law

Dated: July 30, 2024               ***Attorneys for Defendant***

**Certificate of Service**

      I, Robert M. Goldstein, hereby certify that on this date, July 30, 2024, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including but not limited to Assistant U.S. Attorneys Nicholas Coffey and Elizabeth Bagwell.

                                              **/s/ Robert M. Goldstein**
                                              Robert M. Goldstein