# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Case No. CR-24-146-R |
| v. | ) ) |  |
| MATTHEW ALAN STACY, | ) ) |  |
| Defendant | ) ) |  |

## DEFENDANT'S MOTION TO DISMISS FOR IMPROPER CLASSIFICATION OF MARIJUANA UNDER THE CONTROLLED SUBSTANCES ACT

## <u>WITH INCORPORATED BRIEF IN SUPPORT</u>

Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 742-9015
Email: rmg@goldstein-lawfirm.com

*Admitted pro hac vice*

Josh Welch, OBA #17214
Joey Degiusti, OBA #33734
DEGIUSTI & WELCH PLLC
3721 N. Classen Blvd
Oklahoma City, OK 73118
Telephone: 405.778.3098
Email: josh@dwlegal.law
Email: joey@dwlegal.law

***Attorneys for Defendant***

# TABLE OF AUTHORITIES

REQUEST FOR HEARING…………………………………………………………………...2

BRIEF IN SUPPORT ................................................................................................................2

I. The Statutory and Regulatory Framework ............................................................2

II. Recent Proposal to Reclassify Marijuana ..............................................................3

III. The Current Classification of Marijuana, in Direct Contravention of the Administering Agency's Recently Promulgated Interpretation, Is Unreasonable and Invalid ..................................................................................................................7

IV. An Individual Charged Criminally Need Not Challenge Classification in an Administrative Petition ..........................................................................................10

V. Classification as Schedule I Violates Due Process and Equal Protection ............11

VI. The Court Should Exercise Its Equitable Powers to Foreclose a Prosecution Premised on a Schedule I Classification................................................................12

VII. Conclusion .............................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir. 1982)..............................................12, 13

*Decatur v. Paulding*, 14 Pet. 497 (1840) ...................................................................................7

*Gonzales v. Raich*, 545 U.S. 1 (2005)........................................................................................3

*In re Cassidy,* 892 F.2d 637 (7th Cir. 1990)................................................................12, 13

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ......................................7, 8, 11

*Marbury v. Madison*, 1 Cranch 137 (1803) ................................................................................7

*Moore v. East Cleveland*, 431 U.S. 494 (1977)................................................................11

*New Hampshire v. Maine*, 532 U.S. 742 (2001).......................................................12, 13, 14

*Scarano v. Central R. Co.,* 203 F.2d 510 (3d Cir. 1953)..............................................12, 14

*United States v. Amalfi*, 47 F.4th 114 (2d Cir. 2022) ..............................................9, 10, 11

*United States v. Dickson*, 15 Pet. 141 (1841) ........................................................................8

*United States v. Gongora Baltan*, 798 F. App'x 597 (11th Cir. 2020) (unpublished) .....14

*United States v. Kiffer*, 477 F.2d 349 (2d Cir. 1973).........................................................10

*United States v. Morse*, 2007 WL 4233075 (D. Minn. Nov. 28, 2007)............................13

*United States v. Stevens*, 119 F. App'x 222 (10th Cir. 2004) (unpublished)....................12

*United States v. Sullivan*, 967 F.2d 370 (10th Cir. 1992)..................................................10

*United States v. Urso*, 369 F. Supp. 2d 254 (E.D.N.Y. 2005)...........................................13

*Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019)..............................................................10

# TABLE OF AUTHORITIES

**Statutes**

21 U.S.C. §802..................................................................................................2

21 U.S.C. §811...............................................................................................3, 4

21 U.S.C. §812........................................................................................ *passim*

21 U.S.C. §841................................................................................................. 2

21 U.S.C. §856..................................................................................................2

**Other Authorities**

21 C.F.R. §1308.11.......................................................................................3, 11

21 C.F.R. §1308.12...........................................................................................11

28 C.F.R. §0.100................................................................................................3

# MOTION TO DISMISS FOR IMPROPER CLASSIFICATION OF MARIJUANA UNDER THE CONTROLLED SUBSTANCES ACT

Now comes the Defendant, Matthew A. Stacy, by and through undersigned counsel, pursuant to the Fifth and Sixth Amendments of the United States Constitution and Fed.R.Crim.P. 12(b)(1) and (3), and hereby moves the Court for an order dismissing the instant matter.

Marijuana no longer satisfies the statutory standard for classification as a Schedule I controlled substance. As evidenced by the widespread, years-long use of medical marijuana in Oklahoma and dozens of other states, it unquestionably has "currently accepted medical use in treatment in the United States." 21 U.S.C. §812(b)(1)(B). Moreover, according to findings by the Department of Health and Human Services ("HHS"), accepted by the Attorney General, marijuana does not have "a high potential for abuse," especially as compared to other drugs included in Schedule I, and there is an "accepted safety for use of" marijuana "under medical supervision." 21 U.S.C. §812(b)(1)(A)-(C). Marijuana's failure to meet any one of these three statutory criteria precludes it from being classified as a Schedule I "controlled substance." Indeed, the Attorney General recently acknowledged that marijuana does not satisfy the statutory standard and provided notice of intent to reclassify marijuana to Schedule III. Because marijuana is not currently included in any other Schedule, however, its improper classification as a Schedule I controlled substance requires dismissal of all charges against Mr. Stacy.

The Defendant further relies upon the brief in support incorporated below.

**REQUEST FOR HEARING**

The Defendant respectfully requests a hearing in this matter.

**BRIEF IN SUPPORT**

I.     *The Statutory and Regulatory Framework.*

The Controlled Substances Act ("CSA") proscribes, among other things, the manufacture, distribution, or possession with the intent to manufacture or distribute, of "a controlled substance." 21 U.S.C. §841(a)(1); *see also* §856(a)(2) (prohibiting certain uses of property "for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance"). The term "controlled substance" is, in turn, defined to include any "drug or other substance . . . included in" any of five Schedules designated I through V. §802(6). Congress specified that, in general,[1] no drug could be placed in Schedule I, the most restrictive of the five, absent findings that: "(A) [t]he drug . . . has a high potential for abuse"; "(B) [t]he drug . . . has no currently accepted medical use in treatment in the United States"; and "(C) [t]here is a lack of accepted safety for use of the drug . . . under medical supervision." §812(b)(1).

---

[1] The statute has exceptions for "immediate precursor[s]" and drugs for which "control is required by United States obligations under an international treaty, convention, or protocol." §812(b). Marijuana is not an immediate precursor. *See* §802(23) (defining that term). Moreover, while marijuana is the subject of certain treaty obligations, those obligations do not require its classification in Schedule I. *See* Department of Justice, Schedules of Controlled Substances: Rescheduling of Marijuana (May 16, 2024) at 84-86, *available at* https://www.dea.gov/sites/default/files/2024-05/Scheduling%20NPRM%20508.pdf.

When Congress passed the CSA more than five decades ago, on October 27, 1970, it included "Marihuana" in a list of Schedule I substances. §812(c), Schedule I(c)(10). That initial designation was, however, expressly provisional. *See id.*, Schedule I(c) (listing substances for inclusion "[u]nless specifically excepted or unless listed in another schedule"). It was a "preliminary classification . . . based, in part, on the recommendation of the Assistant Secretary of [Health, Education, and Welfare] 'that marihuana be retained within schedule I at least until the completion of certain studies [then] underway.'" *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) (citation omitted).

Congress called upon the Attorney General to "apply the provisions of [the CSA] to the controlled substances listed in the schedules established by section 812." 21 U.S.C. §811(a). The Attorney General was obligated to "update[] and republish[]" the schedules "on an annual basis." §812(a). The Drug Enforcement Administration ("DEA"), pursuant to a delegation of authority from the Attorney General, *see* 28 C.F.R. §0.100, has continuously, through April 15, 2024, included marijuana in Schedule I. *See* 21 C.F.R. §1308.11.

II.  ***Recent Proposal to Reclassify Marijuana.***

On May 16, 2024, the Attorney General issued notice of a proposal "to transfer marijuana from schedule I of the [CSA] to schedule III of the CSA, consistent with the view of the Department of Health and Human Services ('HHS') that marijuana has a currently accepted medical use as well as HHS's views about marijuana's abuse potential and level of physical or psychological dependence." *See* Department of Justice,

3

Schedules of Controlled Substances: Rescheduling of Marijuana (May 16, 2024) ("DOJ Memo" herein) at 1, *available at* https://www.dea.gov/sites/default/files/2024-05/Scheduling%20NPRM%20508.pdf.  On October 6, 2022, President Biden requested that the Attorney General and HHS "initiate the administrative process to review expeditiously how marijuana is scheduled under federal law." *Id.* at 12-13 (citation omitted).  On August 29, 2023, HHS, after undertaking "a scientific and medical evaluation," *id.* at 13, recommended "that marijuana be rescheduled to schedule III." *Id.* at 7.  "HHS found that marijuana has a potential for abuse less than the drugs or other substances in schedules I and II; that marijuana has a [currently accepted medical use]; and that the abuse of marijuana may lead to moderate or low physical dependence or high psychological dependence." *Id.* at 13.  Pursuant to the CSA itself, HHS's recommendation was "binding on the Attorney General as to . . . scientific and medical matters."  21 U.S.C. §811(b).

Importantly for present purposes, HHS found, and the Attorney General accepted, that marijuana does not meet any of the three statutory criteria for classification as a Schedule I substance.  On the first point, "high potential for abuse," §812(b)(1)(A), HHS found that "the vast majority of individuals who use marijuana are doing so in a manner that does not lead to dangerous outcomes to themselves or others."  DOJ Memo at 15.  HHS also "compared the rank ordering of selected drugs that are abused for various epidemiological measures and observed that marijuana was among the drugs at the very lowest ranking for a number of measures, including [poison center] abuse cases,

4

likelihood that any use would lead to a [poison center] call, accidental or unintentional poisoning, utilization-adjusted rates of unintentional exposure, utilization-adjusted and population-adjusted rates for [emergency department] visits and hospitalizations, likelihood of being diagnosed with a serious [substance use disorder], deaths reported to [poison centers], and overdose deaths . . . ." *Id.* at 69. Based on this and other information presented by HHS, the Attorney General concluded "that marijuana has a potential for abuse less than the drugs or other substances in schedules I and II." *Id.* at 70.

On the second issue, the lack of any "currently accepted medical use in treatment in the United States," 21 U.S.C. §812(b)(1)(B), the Office of the Assistant Secretary for Health ("OASH") "found that more than 30,000 [health care providers] are authorized to recommend the use of marijuana for more than six million registered patients, constituting widespread clinical experience associated with various medical conditions recognized by a substantial number of jurisdictions across the United States. For several jurisdictions, these programs have been in place for several years, and include features that actively monitor medical use and product quality characteristics of marijuana dispensed." DOJ Memo at 73. The Food and Drug Administration ("FDA") also conducted a review and "found the available data indicated that there is some credible scientific support for the use of marijuana in the treatment of chronic pain, anorexia related to a medical condition, and nausea and vomiting, with varying degrees of support and consistency of findings. Additionally, no safety concerns were identified in FDA's

5

review that would indicate that medical use of marijuana poses unacceptably high safety risks for the indications where there is some credible scientific evidence supporting its therapeutic use." *Id.* at 79.  The Attorney General concluded based on this and other information "that there is a [currently accepted medical use] for marijuana." *Id.* at 80.

On the third and final element of the statutory test, the "lack of accepted safety for use . . . under medical supervision," 21 U.S.C. §812(b)(1)(C), HHS's "evaluation . . . supported a finding that there is accepted safety for the use of marijuana under medical supervision for the treatment of anorexia related to a medical condition, nausea and vomiting (*e.g.*, chemotherapy-induced), and pain."  DOJ Memo at 71.

In addition to analyzing the statutory elements, the DOJ Memo recognized that, over the fifty-plus years that federal classification of marijuana remained static, state law radically changed.  The DOJ Memo noted that, "[s]ince 1996, 38 States, the District of Columbia, and 4 Federal Territories have legalized the use of medical marijuana. . . .." *Id.* at 11 (citations omitted).  "Further, beginning in Fiscal Year 2015, Congress has adopted an appropriations rider every year that prohibits DOJ from using funds to prevent certain States, Territories, and the District of Columbia from implementing their own laws with respect to medical marijuana." *Id.* (citations omitted); *see also generally* Dkt. 67 (Motion to Enjoin).

### III. *The Current Classification of Marijuana, in Direct Contravention of the Administering Agency's Recently Promulgated Interpretation, Is Unreasonable and Invalid.*

The Supreme Court has recently reaffirmed the "foundational" principle that "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2257 (2024) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)). *Loper* overruled so-called *Chevron* deference, pursuant to which courts had "defer[red] to 'permissible' agency interpretations of the statutes those agencies administer—even when a reviewing court read[] the statute differently." *Id.* at 2254. The Court began its analysis with the text of the Constitution: "Article III . . . assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies'—concrete disputes with consequences for the parties involved. The Framers appreciated that the laws judges would necessarily apply in resolving those disputes would not always be clear." *Id.* at 2257. "When the meaning of a statute [i]s at issue, the judicial role" has always been to "interpret the act of Congress, in order to ascertain the rights of the parties." *Id.* (quoting *Decatur v. Paulding*, 14 Pet. 497, 515 (1840)).

"The views of the Executive Branch could inform the judgment of the Judiciary, but did not supersede it. Whatever respect an Executive Branch interpretation was due, a judge 'certainly would not be bound to adopt the construction given by the head of a department.'" *Id.* at 2258 (quoting *Decatur*, 14 Pet. at 515). "Otherwise, judicial judgment would not be independent at all. As Justice Story put it, 'in cases where [a

court's] own judgment . . . differ[ed] from that of other high functionaries,' the court was 'not at liberty to surrender, or to waive it.'" *Id.* (quoting *United States v. Dickson*, 15 Pet. 141, 162 (1841)).

"In a case involving an agency, of course, [a] statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 2263. In such circumstances, the Court's role "is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, fix[ing] the boundaries of [the] delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id.* (citations and quotations omitted). "In an agency case as in any other, . . . there is a best reading" of the statute, namely "the reading the court would have reached if no agency were involved. It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible." *Id.* at 2266 (citation omitted). In sum, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 2273.

Here, it seems beyond reasonable debate that marijuana no longer satisfies the statutory standard for classification as a Schedule I controlled substance. Marijuana has a "currently accepted medical use in treatment in the United States." 21 U.S.C. §812(b)(1)(B). Oklahoma, among a vast majority of states nationwide, has legalized

medical marijuana and erected a "regulatory framework governing" its "cultivation and distribution" within the state. Indictment, Introduction ¶ 1; *see also United States v. Amalfi*, 47 F.4th 114, 125 (2d Cir. 2022) (noting that defendants "convincingly argue[d] that it is irrational for the government to maintain that marijuana has no accepted medical use" and suggesting "it would therefore be difficult for us to conclude otherwise"). This fact alone precludes marijuana from satisfying the statutory definition.

Moreover, this is not a case where any contrary position would be supported by deference to an expert agency charged with administering the statute. To the contrary, the Attorney General has expressly concluded that marijuana does not have a high potential for abuse, it has current accepted medical uses, and there is an accepted safety for use of the drug under medical supervision, such that marijuana does *not* belong in Schedule I.

Finally, while the Attorney General has proposed reclassifying marijuana under Schedule III, that prospective action cannot save the current prosecution. As the Second Circuit observed in *United States v. Amalfi*, 47 F.4th 114, 123 (2d Cir. 2022), albeit in the face of a constitutional challenge, "the remedy for the unconstitutional scheduling of marijuana . . . would be the removal of marijuana entirely from *any* schedule. Unless and until the government rescheduled marijuana, it would cease to be a 'controlled substance.'" The same holds true here. Indeed, prosecuting Mr. Stacy under a re-classification that has not yet occurred would violate the Constitutional prohibition against *ex post facto* laws. *See* U.S. Const. Art. I, §§ 9, 10.

## IV. *An individual Charged Criminally Need Not Challenge Classification in an Administrative Petition.*

In *Amalfi*, the defendants do not appear to have challenged on appeal the classification of marijuana in Schedule I as a statutory matter. Instead, the Second Circuit addressed their appellate claims as exclusively Constitutional in nature. To the extent the Second Circuit opinion suggests that marijuana's "fail[ure] to meet the statute's enumerated criteria" could only be raised in the context of "an administrative petition for rescheduling," the defense respectfully submits that such language is unpersuasive *dicta*. *Amalfi*, 47 F.4th at 125.

As *Amalfi* itself recognized, "application of the exhaustion doctrine to criminal cases is generally not favored because of the severe burden it imposes on defendants." *Id.* at 122 (citation omitted). The primary precedent relied upon by *Amalfi* on this issue, *United States v. Kiffer*, 477 F.2d 349, 355 (2d Cir. 1973), expressly refused to require exhaustion of a defense argument "that the statutory assignment of marihuana to Schedule I . . . is arbitrary and unreasonable in light of the criteria for classification established by the statute." *See also Washington v. Barr*, 925 F.3d 109, 119 (2d Cir. 2019) (referring to *Kiffer* as "consider[ing] a challenge to the scheduling of marijuana under the CSA without requiring exhaustion"). And the Tenth Circuit has considered on the merits similar arguments by criminal defendants regarding improper classification of drugs under the CSA. *See, e.g.*, *United States v. Sullivan*, 967 F.2d 370, 372-73 (10th Cir. 1992). "[T]hose cases that have denied certain nonconstitutional defenses to

criminal defendants for failure to exhaust remedies did so pursuant to statutes," unlike the CSA, "that implicitly or explicitly mandated such a holding." *Moore v. East Cleveland*, 431 U.S. 494, 497 n.5 (1977); *see also Amalfi*, 47 F.4th at 122 (referring to exhaustion under the CSA as "prudential, not jurisdictional" and "a judicially-created administrative rule, applied by courts in their discretion" (citation omitted)). Finally, to the extent there was previously any doubt on this point, *Loper* reaffirmed that it is the duty of the Court, not the agency, to determine whether the defendant's conduct satisfies the criminal statute under which he stands charged.

V.     ***Classification as Schedule I Violates Due Process and Equal Protection.***

The defense alternatively contends, even assuming *arguendo* the Court rejects the foregoing statutory argument, classification of marijuana as a Schedule I controlled substance also violates the Fifth Amendment's Due Process and Equal Protection guarantees. *See* 21 C.F.R. §§1308.11-12. Stated simply, there is no rational basis for classifying marijuana as a Schedule I controlled substance, alongside drugs such as heroin, LSD (lysergic acid diethylamide), and ecstasy (methylenedioxymethamphetamine), and **more strictly regulated than fentanyl**, **cocaine, methamphetamine, and oxycodone** (which appear in Schedule II). While certain out-of-circuit authorities, including the Second Circuit in *Amalfi*, have rejected similar Constitutional arguments, none of those courts has analyzed the issue with the benefit of the Attorney General's recent analysis and there is no binding Tenth Circuit precedent on point.

11

## VI. The Court Should Exercise Its Equitable Powers to Foreclose a Prosecution Premised on a Schedule I Classification.

As the Supreme Court noted in *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001), the judicial estoppel doctrine is designed "to protect the integrity of the judicial process," by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." (internal citations and quotations omitted); *see also In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir. 1982) (judicial estoppel "protect[s] the essential integrity of the judicial process"); *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts'"). "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *New Hampshire v. Maine*, 532 U.S. at 750 (citations omitted). While the Tenth Circuit had "historically rejected application of the doctrine," it has since acknowledged that "the Supreme Court in *New Hampshire* recently indicated it is applicable in federal court." *United States v. Stevens*, 119 F. App'x 222, 226-27 (10th Cir. 2004) (unpublished).

In *New Hampshire v. Maine*, the Court provided some guidance regarding application of the doctrine, while acknowledging that "[c]ourts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'" *New Hampshire v. Maine*, 532

12

U.S. at 750 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d at 1166). "Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case":

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. at 750-51 (internal citations omitted). The Court was careful to note, however, that "[i]n enumerating these factors, [it did] not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. at 751.[2]

---

[2] There is no consensus as to whether or not the judicial estoppel doctrine can be applied against the government in a criminal case. *See, e.g.*, *United States v. Morse*, 2007 WL 4233075, at *3 (D. Minn. Nov. 28, 2007) ("it is doubtful that judicial estoppel can be applied against the Government in a criminal prosecution"); *United States v. Urso*, 369 F. Supp. 2d 254, 263 (E.D.N.Y. 2005) (collecting cases) ("[t]here is no clear consensus in the federal courts on whether a prosecutor may be precluded from raising an argument at a criminal trial because the government has asserted a factually incompatible argument in pursuing a conviction against another defendant at another trial"). The defense respectfully submits that all of the concerns that animate the doctrine, as outlined by the Court in *New Hampshire v. Maine*, apply with equal force here. Indeed, there is no principled or persuasive reason to exclude the government from a doctrine "intended to prevent the perversion of the judicial process," *In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990), that "protect[s] the essential integrity of the judicial process," *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir. 1982), and guards against parties from "playing 'fast

13

The defense respectfully submits that consideration of these principles warrant application of this equitable doctrine to foreclose a government prosecution based on a Schedule I classification. First, the government's position in this case—that marijuana is a Schedule I controlled substance—clearly contradicts the recent, well-founded position taken by the Attorney General. *See United States v. Gongora Baltan*, 798 F. App'x 597, 599-600 (11th Cir. 2020) (unpublished) ("A district court may apply judicial estoppel to prevent a party from assuming contrary positions in different proceedings") (citing *New Hampshire v. Maine*, 532 U.S. at 749–50). Second, permitting the government to prosecute this case based on a Schedule I classification, which as charged in this case invokes a sentence of *at least* 10 years imprisonment and *up to life*, unquestionably imposes an "unfair detriment" on Mr. Stacy. As such, in addition to all of the other reasons detailed herein, Mr. Stacy respectfully submits the Court should exercise its equitable powers to foreclose a prosecution premised on a Schedule I classification.

## VII.  *Conclusion.*

For all of the foregoing reasons, as well as those to be advanced to the Court at a hearing in this matter, the defense respectfully requests an order dismissing all charges against Mr. Stacy.

---

and loose with the courts,'" *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953).

Respectfully Submitted,

**/s/ Robert M. Goldstein**
Robert M. Goldstein
*Admitted pro hac vice*
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 742-9015
Email: rmg@goldstein-lawfirm.com


Josh Welch, OBA #17214
Joey Degiusti, OBA #33734
DEGIUSTI & WELCH PLLC
3721 N. Classen Blvd
Oklahoma City, OK 73118
Telephone: 405.778.3098
Email: josh@dwlegal.law
Email: joey@dwlegal.law

***Attorneys for Defendant***

Dated: July 30, 2024

## Certificate of Service

I, Robert M. Goldstein, hereby certify that on this date, July 30, 2024, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including but not limited to Assistant U.S. Attorneys Nicholas Coffey and Elizabeth Bagwell.

**/s/ Robert M. Goldstein**
Robert M. Goldstein