# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

|                            |   |                        |
|----------------------------|---|------------------------|
| UNITED STATES OF AMERICA   | ) |                        |
|                            | ) | Case No. CR-24-146-R   |
| v.                         | ) |                        |
|                            | ) |                        |
| MATTHEW ALAN STACY,        | ) |                        |
|                            | ) |                        |
| Defendant                  | ) |                        |

## DEFENDANT'S MOTION TO DISMISS
## UNDER THE COMMERCE CLAUSE

### WITH INCORPORATED BRIEF IN SUPPORT

Now comes the Defendant, Matthew A. Stacy, by and through undersigned counsel, pursuant to Article 1, Section 8, Clause 3 of the United States Constitution, the Fifth and Tenth Amendments to the United States Constitution, and Fed.R.Crim.P. 12(b)(1) and (3), and hereby moves the Court for an order dismissing the instant matter.

In *Gonzales v. Raich*, 545 U.S. 1 (2005), the Court concluded, based on the legislation and facts existing at that time, that it was necessary and proper for Congress to criminalize intrastate marijuana to effectuate its goal to "eradicate" marijuana "in the interstate market." The defense respectfully submits that, given the drastic changes to the legislative and factual landscape since *Raich*, the federal government no longer has a constitutionally sufficient basis for insisting that state-regulated, intrastate marijuana must be banned to serve Congress's interstate goals.

The defense recognizes, however, the Court is likely duty bound to follow the

1

Supreme Court's decision in *Raich*. *See, e.g., Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) (observing "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle despite disagreement with *Albrecht,* for it is this Court's prerogative alone to overrule one of its precedents"). Thus, at minimum, the defense presents the instant motion, and brief in support, to preserve the issues presented herein.

As further grounds and reasons therefore, the defense relies upon the brief in support incorporated below.

## **BRIEF IN SUPPORT**

**I.** *A Federal Ban On Intrastate Marijuana, Which Congress Has Expressly Chosen Not To Enforce In Most States, Is No Longer Necessary Or Proper Exercise Of Government's Commerce Power.*

The Constitution endows Congress with general authority to regulate *interstate* but not *intrastate* commerce; Congress may regulate the latter only where doing so is "necessary and proper for carrying into Execution its authority to regulate Commerce with foreign Nations, and among the several States." *Raich*, 545 U.S. at 5 (citation omitted). This limit follows from the Constitution's division of authority between the states and the federal government: "The States have broad authority to enact legislation for the public good—what we have often called a 'police power.' The Federal Government, by contrast, has no such authority and 'can exercise only the powers

2

granted to it.'" *Bond v. United States*, 572 U.S. 844, 854 (2014), quoting *United States v. Lopez*, 514 U.S. 549, 567 (1995), *McCulloch v. Maryland,* 4 Wheat. 316, 405 (1819)); *see also id.* at 863 ("[F]ederalism protects the liberty of the individual from arbitrary power") (citation omitted); *Printz v. United States*, 521 U.S. 898, 919 (1997) (holding that Congress possesses "not all governmental powers, but only discrete, enumerated ones"). Thus an "act committed wholly within a State cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States." *Bond*, 572 U.S. at 854 (citation omitted). The Supreme Court has warned that Congress's Commerce Clause power "must be read carefully to avoid creating a general federal authority akin to the police power." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012).

In *Raich*, the Court concluded, based on the legislation and facts existing at that time, that it was necessary and proper for Congress to criminalize intrastate marijuana to effectuate its goal to "eradicate" marijuana "in the interstate market." 545 U.S. at 19 & n.29. In reaching that result, the Court relied heavily upon its characterization of the Controlled Substances Act ("CSA") as "a comprehensive framework for regulating the production, distribution, and possession" of marijuana and other drugs. *Id.* at 24; *see also id.* at 27 ("[T]he CSA is a comprehensive regulatory regime specifically designed to regulate which controlled substances can be utilized for medicinal purposes, and in what manner"). Because marijuana was "a fungible commodity" with "an established, albeit illegal, interstate market," *id.* at 18, "Congress's attempt to regulate the interstate

3

market for marijuana would . . . have been substantially undercut if it could not also regulate intrastate possession and consumption." *Sebelius*, 567 U.S. at 561; *see also United States v. Patton*, 451 F.3d 615, 625 (10th Cir. 2006) ("[T]he *Raich* opinion as a whole treats congressional authority over the domestic consumption of marijuana as within [the commerce power] only because it was connected to a comprehensive national ban on 'the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market.' . . . We do not interpret *Raich* as holding that Congress may criminalize the mere possession of a commodity for the purpose of consumption, divorced from such a comprehensive regulatory scheme . . . ." (citation omitted)).

As Supreme Court Justice Clarence Thomas observed in 2021:

> [w]hatever the merits of *Raich* when it was decided, federal policies of the past 16 years have greatly undermined its reasoning. Once comprehensive, the Federal Government's current approach is a half-in, half-out regime that simultaneously tolerates and forbids local use of marijuana. This contradictory and unstable state of affairs strains basic principles of federalism and conceals traps for the unwary. . . . [T]hough federal law still flatly forbids the intrastate possession, cultivation, or distribution of marijuana, the Government, post-*Raich*, has sent mixed signals on its views. In 2009 and 2013, the Department of Justice issued memorandums outlining a policy against intruding on state legalization schemes or prosecuting certain individuals who comply with state law. In 2009, Congress enabled Washington D.C.'s government to decriminalize medical marijuana under local ordinance. Moreover, in every fiscal year since 2015, Congress has prohibited the Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws.

*Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2236-37 (2021) (Thomas, J., statement respecting the denial of certiorari) (citations and internal footnotes omitted);

4

*see also United States v. Guess*, 216 F. Supp. 3d 689, 695 (E.D. Va. 2016) ("[T]he current state of the law—in which state law either legalizes or criminalizes marijuana; federal law criminalizes marijuana; and federal policy does not enforce the federal criminalization of marijuana depending on a defendant's geographic location—creates an untenable grey area in which such certainty and notice have effectively, if not formally, been eradicated"). In sum, according to Justice Thomas, "the Federal Government's current approach to marijuana bears little resemblance to the watertight nationwide prohibition that a closely divided Court found necessary to justify the Government's blanket prohibition in *Raich*." *Standing Akimbo*, 141 S. Ct. at 2238. Accordingly, the CSA's "prohibition on intrastate use or cultivation of marijuana may no longer be necessary *or* proper to support the Federal Government's piecemeal approach." *Id.*

The defense respectfully submits Justice Thomas correctly suggested that the CSA's prohibition on intrastate manufacture and distribution of marijuana is no longer necessary or proper to effectuate the government's regulation of interstate commerce. There can be no doubt that the use and regulation of marijuana nationwide has radically changed in the nearly 20 years since *Raich* was decided. At that time, in 2005, there were just nine states that "authorize[d] the use of marijuana for medicinal purposes." *Raich*, 545 U.S. at 5. At present, there are at least 47 states and five territories that have, to varying degrees, legalized marijuana. And, crucially, as Justice Thomas observed, Congress has repeatedly enacted an appropriations act rider prohibiting individuals in those states and territories from being prosecuted for actions taken in compliance with state law. *See* Consolidated Appropriations Act, Pub. L. No. 118-42, §

531, 138 Stat. 25, 174 (2024); *see also generally* Dkt. 67 (Motion to Enjoin).

The landscape has drastically changed since *Raich*, where the government's unambiguous goal was to "eradicate" the marijuana market in its entirety. 545 U.S. at 19 n.29. Now, by contrast, Congress has taken a relatively hands off approach, generally allowing cultivation and distribution of marijuana pursuant to state-enacted laws and pushing to immunize actions taken in compliance with such laws from federal prosecution. Congress's repeated passage of the appropriations act rider stands as a stark admission that a flat prohibition on intrastate marijuana is not necessary to serve the federal government's regulatory goals.

Thus, in these present circumstances, the defense respectfully submits that prohibition of cultivation of marijuana within the state of Oklahoma is not necessary or proper to the federal government's regulation of commerce. *Cf. Shelby County v. Holder*, 570 U.S. 529, 536 (2013) (stating that Voting Rights Act "imposes current burdens and must be justified by current needs" (citation omitted)); *United States v. Carolene Prod. Co.*, 304 U.S. 144, 153 (1938) ("[T]he constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist"). The federal ban on state-regulated marijuana is an issue of health and safety, which is "primarily, and historically, a matter of local concern." *Gonzales v. Oregon*, 546 U.S. 243, 271 (2006) (citation omitted). It therefore must be assessed "carefully to avoid creating a general federal authority akin to the police power." *Sebelius*, 567 U.S. at 536. The current "half-in, half-out" approach by the federal government fails to justify this encroachment

6

on state sovereignty. *Standing Akimbo*, 141 S. Ct. at 2236-37 (Thomas, J.).

Notwithstanding the foregoing, the defense recognizes the Court is likely duty bound to follow *Raich*. *See State Oil Co. v. Khan*, 522 U.S. at 20 ("The Court of Appeals was correct in applying that principle despite disagreement with *Albrecht,* for it is this Court's prerogative alone to overrule one of its precedents"). As such, at minimum, the defense respectfully preserves the issues presented herein. *See United States v. Hatter*, 532 U.S. 557, 567 (2001) (reiterating that only the Court can overrule one of its precedents, but noting "the court below, in effect, has invited us to reconsider *Evans*").

II. *Conclusion.*

For all of the foregoing reasons, the defense respectfully requests an order dismissing all charges against Mr. Stacy.

on state sovereignty. *Standing Akimbo*, 141 S. Ct. at 2236-37 (Thomas, J.).

Notwithstanding the foregoing, the defense recognizes the Court is likely duty bound to follow *Raich*. *See State Oil Co. v. Khan*, 522 U.S. at 20 ("The Court of Appeals was correct in applying that principle despite disagreement with *Albrecht,* for it is this Court's prerogative alone to overrule one of its precedents"). As such, at minimum, the defense respectfully preserves the issues presented herein. *See United States v. Hatter*, 532 U.S. 557, 567 (2001) (reiterating that only the Court can overrule one of its precedents, but noting "the court below, in effect, has invited us to reconsider *Evans*").

II. *Conclusion.*

For all of the foregoing reasons, the defense respectfully requests an order dismissing all charges against Mr. Stacy.

Respectfully Submitted,

**/s/ Robert M. Goldstein**
Robert M. Goldstein
*Admitted pro hac vice*
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 742-9015
Email: rmg@goldstein-lawfirm.com


Josh Welch, OBA #17214
Joey Degiusti, OBA #33734
DEGIUSTI & WELCH PLLC
3721 N. Classen Blvd
Oklahoma City, OK 73118
Telephone: 405.778.3098
Email: josh@dwlegal.law
Email:  joey@dwlegal.law

Dated: July 30, 2024

*Attorneys for Defendant*

### Certificate of Service

I, Robert M. Goldstein, hereby certify that on this date, July 30, 2024, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including but not limited to Assistant U.S. Attorneys Nicholas Coffey and Elizabeth Bagwell.


**/s/ Robert M. Goldstein**
Robert M. Goldstein