**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. CR-24-146-R |
| v. | ) | |
| | ) | |
| MATTHEW ALAN STACY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT MATTHEW STACY'S MOTION TO JOIN CO-DEFENDANT'S
MOTION TO DISMISS INDICTMENT AS OKLAHOMA'S RESIDENCY
REQUIREMENT IN MARIJUANA GROW OWNERSHIP IS
UNCONSTITUTIONAL UNDER THE DORMANT COMMERCE CLAUSE**

Now comes the Defendant, Matthew A. Stacy, by and through undersigned counsel, and hereby respectfully moves to join co-defendant Chanh "Shawn" Iu Phu's Motion to Dismiss Indictment as Oklahoma's Residency Requirement in Marijuana Grow Ownership is Unconstitutional Under the Dormant Commerce Clause (Doc. 92). As grounds and reasons for its request, the defense states that Oklahoma's residency requirement is unconstitutional under the dormant Commerce Clause for reasons set forth in Mr. Phu's motion, and those set forth below. *See generally Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019). Additionally, Mr. Stacy hereby replies to the arguments advanced by the government in opposition to Mr. Phu's motion. *See* Docs 111, 130.

1

**ARGUMENT**

1. _Mr. Stacy has standing to raise constitutional challenge_.

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." _Clapper v. Amnesty Int'l USA,_ 568 U.S. 398, 408  (2013).  To have Article III standing, a litigant "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action ... and likely to be redressed by a favorable judicial decision." _Lexmark Int'l, Inc. v. Static Control Components, Inc._, 572 U.S. 118, 125 (2014); _see also Susan B. Anthony List v. Driehaus_, 573 U.S. 149, 157–58 (2014) (quoting _Lujan v. Defenders of Wildlife,_ 504 U.S. 555, 560-61 (1992)).[1]  Here, Mr. Stacy clearly satisfies all three requirements.

First, the present prosecution and the concrete threat of imprisonment constitutes an "injury in fact."  Indeed, the Supreme Court has held that when the _threat_ of enforcement is present, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." _Susan B. Anthony List_, 573 U.S. at 157–58 (citing _Steffel v. Thompson,_ 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); _MedImmune, Inc. v. Genentech, Inc.,_ 549 U.S. 118, 128–129 (2007) ("[W]here threatened action by _government_ is concerned, we do not require a plaintiff to expose himself to liability

---

[1] "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." _Kowalski v. Tesmer_, 543 U.S. 125, 128 (2004).

before bringing suit to challenge the basis for the threat").  Here, Mr. Stacy is not simply facing the prospect of arrest or prosecution, but he has been indicted and faces the prospect of life imprisonment.  Clearly, the present prosecution constitutes an "injury in fact;" indeed, the government does not even contend otherwise.  Doc. 111 at 2.

Second, notwithstanding the government argument to the contrary, there is both causation and redressability here.  *See* Govt. Response at 3 (arguing "there is no causal connection between his alleged injury (his prosecution) and the conduct complained of, *i.e.*, that the state of Oklahoma implemented an allegedly unconstitutional residency requirement," and there is no redressability "because a favorable finding that Oklahoma's residency restrictions are unconstitutional would not affect this prosecution in ***any way*** …") (emphasis added).  A review of the indictment makes clear that it is predicated, at least in part, on alleged violations of the very residency requirement that defendants contend is unconstitutional.  *See, e.g.,* Doc. 1, Introduction, ¶ 4 ("At all times relevant to the Indictment, . . . all applications had to show that at least [75%] of all members, managers, executive officers, partners, board members, or any other form of business ownership were Oklahoma residents."), Count 1, ¶ 1 ("During the period of the conspiracy, [Mr. Phu] and [Mr. Stacy] worked together to help marijuana traffickers, who did not qualify to own and operate marijuana farms under Oklahoma's MMP, evade licensing requirements and obtain OMMA licenses and OBN registrations."); Count 1, ¶ 3 ("Despite being aware that [Unindicted Coconspirator 1 ('UC1')] was not an Oklahoma resident, [Mr. Stacy] established the two operating entities for UC1's marijuana grow operations . . . , and also submitted applications for OMMA licenses and OBN

registrations on UC1's behalf."); Count 1, ¶ 6 (alleging that Mr. Stacy "sent two" other non-Oklahoma residents to Mr. Phu "to obtain the OMMA license and OBN registration").

The indictment's reliance upon the residency requirement is no accident: as Mr. Stacy has repeatedly argued, a violation of Oklahoma's regulatory regime governing medical marijuana is required for this prosecution to move forward, *see generally* Motion to Enjoin (Doc. 67), and, in order to obtain conviction, the government will ultimately be required to prove Mr. Stacy's intent to violate state law.  *See generally* Motion to Dismiss for Failure to Plead Necessary *Mens Rea* Element (Doc. 83).  Indeed, the government conceded at the recent hearing that it must prove Mr. Stacy violated state law.  *See* Sept. 23, 2024 Tr. at 31 (lines 7-21).

In light of the foregoing, the government's standing argument collapses.  There is "a causal connection between the injury and conduct complained of" that is redressable by a favorable decision because this Court's holding that the Oklahoma residency requirement is unconstitutional would preclude the government from prosecuting the defendants for alleged violations of that unlawful enactment.  The mere fact that some other allegations may persist does not permit the government to move forward with a prosecution based, in part, on an unconstitutional theory.  This fact is illustrated by the precedents previously cited by Mr. Stacy applying the appropriations rider to enjoin those parts of a federal prosecution based on conduct that complied with state law, even where other parts of the prosecution could continue.  *See* Doc. 99 at 6-7 (citing cases).

2. *The Dennis doctrine is inapposite.*

*Dennis v. United States*, 384 U.S. 855 (1966), which merely held that a person charged with statutory offenses targeting lies and/or fraud, such as 18 U.S.C. §371 and/or 18 U.S.C. §1001, cannot defend such a prosecution by attacking the constitutionality of some other statute, has no application here. In *Dennis*, the defendants were charged with conspiring to defraud the United States, in violation of 18 U.S.C. §371, "by filing false affidavits in purported satisfaction of the requirements of §9(h) of the National Labor Relations Act." *Id.* at 857. Section 9(h), which had since been repealed, required that union officers file "non-Communist affidavits," attesting "that the officer is not a member of the Communist Party or affiliated with such party," among other things. *Id.* at 858. The defendants, charged with filing false affidavits in violation of §371, challenged the constitutionality of §9(h). The Court rejected this challenge "[b]ecause the claimed invalidity of §9(h) would be no defense to the crime of conspiracy charged in th[e] indictment." *Id.* at 867. In other words, the constitutionality of §9(h) had no bearing on whether or not the defendants unlawfully filed false affidavits, in violation of §371.

Here, Mr. Stacy and his co-defendants are charged with drug offenses, not §§1001, 371, or some analogous statute targeting lying to or defrauding of the government. *See, e.g., United States v. Isler*, 2023 WL 5600931 (W.D.Ok. Aug. 29, 2023) (holding "that the government's prosecution of Defendant for making a false statement in connection with the purchase of a firearm does not allow him to challenge the constitutionality of §922(n)"); *United States v. Bledsoe*, 334 F. App'x 711 (2009) (unpublished) (not reaching constitutional challenge to §922(b)(1) because defendant was

5

"not being charged with violating § 922(b)(1), but of conspiring to make a false material statement in the purchase of a firearm, which she admitted doing"); *Goland v. United States*, 903 F.2d 1247, 1254 (9th Cir.1990) ("In other words, what the *Dennis* defendants were prosecuted for were their conspiratorial false statements to the government. Were Goland's crimes limited to charges of violating 18 U.S.C. § 1001 and 18 U.S.C. § 371 (statutes criminalizing conspiracies to defraud the government and causing false statements to the government) he could not collaterally raise the constitutionality of FECA").  The *Dennis* doctrine, to whatever extent it retains any vitality, *see Goland*, 903 F.2d at 1253 (noting "[s]ome doubt exists as to the vitality of the *Dennis* rule"), has no application here.  Indeed, the government does not cite a single case where *Dennis* has been applied outside the context of a prosecution explicitly charging a false statement/defrauding offense.  In fact, in *United States v. Knox*, 396 U.S. 77, 78 (1969), cited by the government in its supplemental pleading (Doc. 130 at 4), the government there agreed it "would not pursue the first four counts" that did not charge 18 U.S.C. §1001.

3.  *The Court should reject the government's equitable powers argument.*

The government argument that the Court should decline to exercise its equitable powers is clearly inapt.  The sole authority cited in support of that argument, *Original Investments, LLC v. State*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021), involved a civil action seeking declaratory and injunctive relief.  Thus, there was "no dispute" that the plaintiff in that case sought exclusively equitable relief.  *Id.* at 1233.  This is, by contrast, a criminal prosecution in which the defendants contend that a statutory enactment

6

underlying at least part of the indictment is unconstitutional. This is a quintessential example of the Court's duty "to say what the law is," not an exercise of equitable discretion that the Court may simply decide to forgo. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2257 (2024) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).

    4.  *The residency requirement is unconstitutional.*

Finally, the government's late-breaking contention, not raised in its initial opposition to Mr. Phu's motion, *see generally* Doc. 111, that the residency requirement does not violate the dormant Commerce Clause is unconvincing. As the government acknowledges, "[t]he only circuit to address the issue," the First Circuit, held that the dormant Commerce Clause applies. The government, relying largely on the First Circuit dissenting opinion, contends that the dormant Commerce Clause should not apply to commerce that violates federal law. But the First Circuit majority convincingly refuted that same argument.

Such argument is substantially undermined by Congress's repeated "enactment of the Rohrabacher-Farr Amendment," "reflecting the fact that over time more than half of all states have legalized the market for medical marijuana to some extent." *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 547-48 (1st Cir. 2022). "This congressional action . . . reflects that Congress contemplates both that an interstate market in medical marijuana may exist that is free from federal criminal enforcement and that, if so, this interstate market may be subject to state regulation." *Id.* at 549. "Thus, whatever the circumstances may be with respect to other goods that Congress has deemed contraband, this is not a case in which Congress may be understood

7

to have criminalized a national market with no expectation that an interstate market would continue to operate. Quite the opposite. Congress has taken affirmative steps to thwart efforts by federal law enforcement to shut down that very market . . . . And it has taken those steps, presumably, with an awareness of the beneficial consequences that those steps will have for consumers who seek to obtain medical marijuana." *Id.* at 553. In this context, the First Circuit majority was "not as confident as the dissent that interstate rivalry in the commercial realm poses no risk to our national system of government whenever the commercial market at issue is one that federal law makes illegal." *Id.* at 552. Indeed, "[t]he destructive consequences of allowing states to exercise an unfettered power to discriminate against each other's industry have been of great concern since the Founding." *Id.* at 553.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in Mr. Phu's motion, the defense respectfully requests an order declaring the Oklahoma residency requirement unconstitutional and dismissing those charges against Mr. Stacy predicated upon an alleged violation of the residency requirement.

Respectfully Submitted,

**/s/ Robert M. Goldstein**
Robert M. Goldstein
*Admitted pro hac vice*
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
Telephone: (617) 742-9015
Email: rmg@goldstein-lawfirm.com

Josh Welch, OBA #17214
Joey Degiusti, OBA #33734
DEGIUSTI & WELCH PLLC
3721 N. Classen Blvd
Oklahoma City, OK 73118
Telephone: 405.778.3098
Email: josh@dwlegal.law
Email:  joey@dwlegal.law

Dated October 9, 2024

***Attorneys for Defendant***

## Certificate of Service

I, Robert M. Goldstein, hereby certify that on this date, October 9, 2024, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including but not limited to Assistant U.S. Attorneys Nicholas Coffey and Elizabeth Bagwell.

**/s/ Robert M. Goldstein**
Robert M. Goldstein

9